UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN E. SCHOONOVER, | ) | CIVIL ACTION NO. 4:20-CV-1583 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Brian E. Schoonover, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, I find that the Commissioner's final decision must be VACATED.

II.     BACKGROUND & PROCEDURAL HISTORY

On June 7, 2018, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 18-2, p. 16).   In this application, Plaintiff alleged he became disabled on September 9, 2016, when he was forty-three years old, due to the following conditions: arthritis in knees; hypertension; diabetes; neuropathy; scoliosis with spinal fusion from Harrington rods; learning disabilities; depression; anxiety; lumbago; and displaced discs at L Level. (Admin. Tr. 161; Doc. 18-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, understand, and follow instructions. (Admin. Tr. 185; Doc. 18-6, p. 30). Plaintiff has at least a high school education. (Admin. Tr. 24; Doc. 18-2, p. 25). Before the onset of his impairments, Plaintiff worked as a housekeeper. (Admin. Tr. 24; Doc. 18-2, p. 25).

On August 1, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 18-2, p. 16). On October 3, 2018, Plaintiff requested an administrative hearing. *Id*.

On May 14, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Paula Garrety (the "ALJ"). *Id*. On July 2, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 26; Doc. 18-2, p. 27). On July 19, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 140; Doc. 18-4, p. 27).

On July 15, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 18-2, p. 2).

On September 2, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court enter an order awarding benefits, or in the alternative, remand this matter for a new administrative hearing. *Id*.

On March 19, 2021, the Commissioner filed an Answer. (Doc. 17). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 18).

Plaintiff's Brief (Doc. 19), the Commissioner's Brief (Doc. 22), and Plaintiff's Reply (Doc. 23) have been filed.  This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and

the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether

---

[2] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 2, 2019.

the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

With these standard in mind, I now turn to the merits of Plaintiff's claims.

## IV. DISCUSSION

Plaintiff raises the following arguments in his statement of errors:

1. The ALJ's rejection of Dr. Cherukari's opinion is not supported by substantial evidence; the ALJ substituted her opinion for that of a medical one in the rejection of Dr. Cherukuri's opinion; the ALJ erroneously relied upon lay reinterpretation of evidence in the rejection of Dr. Cherukuri's opinion.

2. The residual functional capacity is not supported by substantial evidence; despite purporting to find Dr. Potera's opinion "generally persuasive" and finding it to be consistent with the record, the ALJ failed to include—or explain his failure to

include—the use of a cane within the residual functional capacity assessment.

3.      The ALJ erred in failing to include the use of a cane within the residual functional capacity assessment; the residual functional capacity assessment exceeds the limitations of every medical opinion of record.

(Doc. 19, pp. 5-6).

A.      THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her July 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2020. (Admin. Tr. 17; Doc. 18-2, p. 18). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 9, 2016 (Plaintiff's alleged onset date) and July 2, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17; Doc. 18-2, p. 18).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine; neuropathy; diabetes mellitus; and scoliosis with Harrington rods. *Id.* The ALJ found that Plaintiff's mental impairment was medically determinable but non-severe during the relevant period. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18; Doc. 18-2, p. 19).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> The claimant would be limited to unskilled work, confined to routine, repetitive tasks. He would be limited to jobs that afford the opportunity to alternate positions approximately once each hour. He should have no exposure to heights or hazards. The claimant would be limited to work performed in a clean and temperate environment.

(Admin. Tr. 19; Doc. 18-2, p. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 24; Doc. 18-2, p. 25). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24-25; Doc. 18-2, pp. 25-26). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: order clerk, DOT #209.567-014; telephone information clerk, DOT #237.367-046;

and video monitor/surveillance, DOT #379.367-010. (Admin. Tr. 25; Doc. 18-2, p. 26).

    B.    SUMMARY OF MEDICAL OPINION EVIDENCE & TESTIMONY ABOUT CANE USE

In her opinion, the ALJ noted that Plaintiff underwent a thoracolumbar fusion in 1989. (Admin. Tr. 20). There are medical record which suggests that Plaintiff complained of back pain beginning in 2016. (Admin. Tr. 308-317). In October 2016 (approximately one month after the alleged onset date, and more than a year before Plaintiff applied for benefits) Plaintiff called to request a prescription for a rolling walking. (Admin. Tr. 307). November 2016 records list a "Rollator" under his current outpatient prescriptions. (Admin. Tr. 305). Although this record does not include any physical examination findings about Plaintiff's back, it does list "back pain" under "Review of Systems" and lists the following diagnoses: chronic midline low back pain, with sciatica presence unspecified; and displacement of lumbar intervertebral disc without myelopathy. (Admin. Tr. 307). The ALJ noted that Plaintiff was noted to use a cane in May 2017, April 2018, July 2018, and March 2019. (Admin. Tr. 21-22) (citing Admin. Tr. 251, 218, 526, 539). During the July 2018 exam, it was noted that Plaintiff walked with an antalgic gait and was unable to heel walk or toe walk due to pain. (Admin. Tr. 528).

Two medical sources provided opinions about Plaintiff's physical impairments: state agency consultant, Dr. Potera; and treating source, Dr. Cherukuri.

On July 31, 2018, Dr. Potera completed an RFC assessment as part of the initial review of Plaintiff's application for benefits. (Admin. Tr. 109-111). In this assessment, Dr. Potera opined that Plaintiff could: occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk (with normal breaks) for a total of two hours; sit (with normal breaks) for a total of six hours; occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. Dr. Potera noted that Plaintiff was limited in his left lower extremity, and should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. *Id.* In support of this opinion, under the heading "RFC – Additional Explanation," Dr. Potera wrote:

> Claimant with scoliosis and TL surgery/fusion 1989. *He has recurrent pain with paresthesias left leg with weakness and uses cane for ambulation.* MRI convex left curvatures L2-L3 with severe stenosis L4-L5 and likely nerve root impingement. He is 76" tall and weighs 230 lbs with DM I and hypertension.

*Id.* (emphasis added).

The ALJ found Dr. Potera's opinion to be "generally persuasive." In doing so, he explained:

Page 12 of 23

Dr. Potera, the State Agency physical examiner, opined that the claimant retains the capacity to perform a light range of exertional work (Exhibit C3A/7-8). He further opined that the claimant should never climb ladders, ropes, or scaffolds, but could perform all other postural maneuvers occasionally (Exhibit C3A/7). The undersigned finds this opinion is generally persuasive, as it is consistent with and supported by the objective medical evidence, including the claimant's surgical history and diagnostic test results and measurable findings on clinical examinations. This opinion is also consistent with and supported by the findings from objective physical examinations, including the findings that the claimant had some tenderness over his lumbar spine, decreased sensation over his left lower extremity and buttock, and walked with an antalgic gait at one appointment, but otherwise retained full strength, normal range of motion and had negative straight leg raise tests, as described in more detail above. In consideration of all the evidence, and affording claimant all benefit of the doubt, the undersigned has extended additional appropriate limitations in the above residual functional capacity assessment, and finds the claimant would be limited to a range of sedentary exertional work, as noted above.

(Admin. Tr. 22).

On May 23, 2019, Dr. Cherukuri completed a check-box medical source statement about Plaintiff's physical limitations. (Admin. Tr. 554-560). In the medical source statement, Dr. Cherukuri identified Plaintiff's diagnoses as scoliosis and displacement of lumbar disc, and assessed that Plaintiff could: sit up to fifteen minutes at one time or for a total of two hours per eight-hour workday; stand or walk for a total of less than fifteen minutes at one time or for a total of two hours per eight-hour workday; rarely or never lift any object of any weight; constantly balance, look down, look upward, look sideways, reach, use his hands;

Page 13 of 23

and rarely/never stoop. (Admin. Tr. 554-560). In addition to these restrictions, Dr. Cherukuri assessed that Plaintiff would: need to shift positions between sitting, standing and walking every fifteen minutes; need a fifteen minute break to lay down and rest every two hours to relieve pain; would need to lay down in a supine position for more than six hours per eight-hour workday; would frequently have pain severe enough to interfere with attention and concentration; and would have moderate difficulty dealing with work stress. *Id.* Last, Dr. Cherukuri assessed that a hand-held assistive device, specifically a cane or walker, was medically required to help Plaintiff walk and stand on all surfaces or terrains. *Id.*

The ALJ found that the opinion of Dr. Cherukuri was "not persuasive." In doing so, the ALJ explained:

> Dr. Cherukuri opined that the claimant would be limited to sitting for fifteen minutes before needing to change positions, and noted that the claimant would need to alternate positions by standing or walking for less than fifteen minutes before returning to a seated position (Exhibit C3F/21). She noted that the claimant could sit for two total hours in an eight-hour workday (Exhibit C3F/21). She further opined that the claimant could stand or walk for less than fifteen minutes at one time (Exhibit C3F/21). Dr. Cherukuri also noted that the claimant would need to alternative to a sitting position for less than fifteen minutes before returning to a standing or walking position (Exhibit C3F22). She indicated that the claimant could stand or walk for two total hours in an eight-hour workday (Exhibit C3F/22). She also opined that the claimant would need to rest in a lying or reclining position during the workday for more than sis [sic] total hours (Exhibit C3F-22-23). She noted that the claimant could rarely/never lift or carry any weight (Exhibit C3F/23). She indicated that the claimant could rarely/never stoop, but could continuously balance while standing or walking on

level ground (Exhibit C3F/23). Dr. Cherukuri also noted that the claimant would require the use of a cane or walker while walking and standing (Exhibit C3F/24). Overall, the undersigned finds this opinion is not persuasive, as it is not consistent with or supported by Dr. Cherukuri's own examination findings that the claimant had thoracolumbar scoliosis and walked with a cane, but had no other significant neurological findings (Exhibit C3F/4). In addition, Dr. Cherukuri indicated that she completed this form after only two examinations of the claimant, and her opinion was not based on long-term objective observation and examinations of the claimant (Exhibit C3F/19). Her opinion is also not consistent with or supported by the overall objective evidence of record, including the findings that the claimant had some spinal tenderness and decreased sensation over his left lower extremity, but otherwise retained full strength and had negative straight leg raise tests, as noted above. While the record indicates that the claimant presented to some appointments with the use of a cane, but not a walker, to assist with ambulation, the opinion that the claimant would require a cane while working is not supported by the treatment notes which indicate that the claimant retained full strength and range of motion over his lower extremities, and had negative straight leg raise and Patrick's tests, as noted above. It is also not consistent with the lack of any other objective neurological or strength deficits in Dr. Cherukuri's own examination records.

(Admin. Tr. 23).

During his administrative hearing, Plaintiff testified:

Q    You came in today using a walker, a rollator walker, why do you need to use the walker?

A    For balance reasons. My legs are weak from the herniated discs, I have neurogenic numbness in the sac regions, which is down my buttocks and both of—down the back of both my legs.

Q    How long have you been using the walker?

A    Off and on for probably a year, but more recently I have to—since my condition has worsened, I have to—any extended time out walking or out and about, which is rarely that I get out—

Page 15 of 23

Q     Where do you go when you get out?

A     Mostly just doctor's appointment or I may visit my brother, that's basically it.

. . . .

Q     Can you tell us how often throughout a typical day you'd use a walker?

A     It's typical that I have a small apartment that we live in, so I try to get through doors and into the bathroom and such, so that I use the assistance of my cane for that.

Q     What do you need help with around the house and by that I meant what do you need a walker or a cane to do around the house?

A     It assists me in getting up off the toilet, I use it when I get out of the shower, I'll use my rollator to sit on and get dressed. My son helps me with my laundry, so I don't really do that. It's just too heavy to pick up.

(Admin. Tr. 39-40).

C.    WHETHER PLAINTIFF'S CANE USE WAS IMPROPERLY EXCLUDED FROM THE ALJ'S RFC ASSESSMENT

As summarized above, both opinions mentioned Plaintiff's cane use. The ALJ addressed walker use in her explanation of discounting Dr. Cherukuri's opinion, but did not mention cane use in reference to Dr. Potera's opinion.

Plaintiff argues:

As discussed in Argument 1 *supra*., the ALJ erroneously rejected the opinion of Dr. Cherukuri which included limitations in Schoonover's ability to stand/walk without a cane or walker. As discussed in Argument 2, *supra*., the ALJ found Dr. Potera's opinion to be

consistent with and supported by the record and thus, should have adopted the use of a cane from this opinion as well. However, assuming *arguendo* that the Court does not remand on either of these bases, remand would still be required as the ALJ's residual functional capacity assessment exceeds the limitations of all medical opinions of record.

In other words, despite the fact that the only medical opinions of record support the use of a cane to ambulate, the ALJ nevertheless concluded that Schoonover can work without the use of a cane. In sum, the ALJ did not rely on any medical opinion when assessing Plaintiff's residual functional capacity.

This is not a question of whether an ALJ is "bound" by a medical opinion, but rather, whether the ALJ's opinion can be supported by substantial evidence where the ALJ's lay reinterpretation of raw medical data is used to supplant a physician's opinion. Indeed, the Third Circuit Court of Appeals has repeatedly said that in such a case, the decision is not supported by substantial evidence. *See e.g.*, *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("an ALJ may not make speculative inferences from medical reports" and "is not free to set his own expertise against that of a physician who presents competent evidence.")

As discussed by Magistrate Judge Saporito, this argument is nothing more than a straightforward application of the substantial evidence standard. *See Sanders v. Berryhill*, Civ. A. No. 4:16-cv-02160-MWB at *11 (M.D. Pa. Dec. 11, 2017) (Saporito, M.J.). An RFC crafted by an ALJ is not supported by substantial evidence if medical opinions of functionality are present and none support the ALJ's finding. *Sanders*, Civ. A. NO. 4:16-cv-02160-MWB at *11 (*citing Doak v. Heckler*, 790 F.2d 26, 29) (3d Cir. 1986) ("No physician suggested that the activity [Mr.] Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.")).

The facts of Schoonover's case are analogous to that of *Sanders* and *Doak*. Here, we have two separate medical opinions which support the use of a cane and therefore support a residual functional capacity less

than found by the ALJ. Thus, the sum total of the record provides less thana scintilla of support. *See also e.g.*, *Pasanen v. Berryhill*, NO. 3:17-cv-01164-CCC at *23 (M.D. Pa. Aug. 2, 2018) (Saporito, M.J.); *see also*, *e.g.*, *Prebish v. Berryhill*, Civ. A. No. 3:18-cv-710 (M.D. Pa. Jun. 10, 2019) (Carlson, M.J.); *Frederick v. Berryhill*, Civ. A. No. 17-cv-1273 (M.D. Pa. May 3, 2018) (Carlson, M.J.);.

Here, the only medical opinions of record regarding Schoonover's exertional limitations suggest that Schoonover cannot work without the use of a cane to ambulate. Thus, the only medical opinions of record are more restrictive than the ALJ's residual functional capacity assessment. There is no medical opinion of record which supports the ALJ's residual functional capacity assessment. Thus, the Plaintiff and the Court are left to conclude that the ALJ substituted his opinion for that of a medical one and relied upon lay reinterpretation of the evidence to supplant the only medical opinion of record.

The ALJ required to provide "a clear and satisfactory explication of the basis" of the weight he accorded to each opinion. *Cotter v. Harris*, 642 F.2d 700. 70r (3d Cir. 1981). It cannot be said that the ALJ's explanation is clear or satisfactory when he has failed to explained how Plaintiff is capable of working without the use of a cane to ambulate when the only medical opinions of record supports that eh cannot. *See Pasanen*, No. 3:17-cv-01164-CCC at *23, Remand is required[.]

(Doc. 19, pp. 15-18).

In response, the Commissioner argues:

In his final challenge, Plaintiff argues that the ALJ erred because he fashioned the RFC without supporting medical opinions (Pl.'s Br. at 15-18). This is both factually and legally incorrect. As explained above, the opinion evidence does not unanimously support the need for a cane because Dr. Potera reached no such conclusion (Tr. 110). The ALJ's sedentary RFC assessment fully aligned with the prior administrative medical finding of Dr. Potera that concluded that Plaintiff could stand/walk for two hours (Tr. 110). Therefore, there is

no factual merit to Plaintiff's argument that the ALJ assessed the RFC without the benefit of a medical opinion.

Nonetheless, the regulatory framework does not support foisting an obligation on an ALJ to base the RFC finding on a medical opinion or prior administrative medical finding. A claimant's RFC is [an] administrative medical finding that the ALJ is responsible for fashioning, and no statutory or regulatory provision requires an ALJ to adopted a medical opinion or prior administrative medical finding when making the RFC finding. *See* 20 C.F.R. §§ 404.1545, 404.1546; *accord Chandler v. Astrue*, 667 F.3d 356, 362 (3d Cir. 2011) (finding that the ALJ did not improperly inject his "lay opinion" in fashioning the claimant's RFC and was "not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"); *Foux v. Saul*, NO. 3:17-CV-1476, 2021 WL 1207720, at *2 (M.D. Pa. Mar. 30, 2021) ("[T]he RFC assessment is the exclusive province of the ALJ and not the province of treating physicians or other medical providers.").

Indeed, when promulgating the new regulations, the agency disagreed with a proposal that would have effectively required ALJs to "adopt the opinions of either a treating physician or a consultative examiner to determine if the claimant meets our statutory definition of disability." 82 Fed. Reg. 5844-01, at 5856 (Jan. 18, 2017). Instead, the RFC finding is the ALJ's to make, *see* 20 C.F.R. § 404.1546(c), and the ALJ cannot "defer . . . to any medical opinion(s) or prior administrative medical finding(s)." *Id.* at § 404.1520c(a).

(Doc. 22, pp. 22-23).

A claimant's use of a cane need not be incorporated in an ALJ's RFC assessment unless that cane is medically required. SSR 96-9p explains that:

To find that a hand-held assistive device is medically required, there must be *medical documentation* establishing the need for a hand-held assistive device to aid in walking or standing, *and* describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any

other information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., and unstable knee), or to reduce pain while walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

1996 WL 374185 at *7 (emphasis added).

In *Cotter v. Harris*, the Third Circuit recognized that there is "a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." 642 F.2d 700, 706 (3d Cir. 1981). In defining the parameters of this obligation, the Circuit explained:

[i]n our view and examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a

Page 20 of 23

statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its opinion denying a rehearing in *Cotter*, the Circuit further elaborated that "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481 (3d Cir. 1981).

I find that the ALJ did not adequately explain her analysis of Dr. Potera's RFC assessment, and as a result the decision to reject the cane use limitation. I am not persuaded by the Commissioner's argument that Dr. Potera's reference to cane use was merely "summary." First, Dr. Potera's reference to cane use appears under the heading "Additional Explanation." Second, the ALJ did not mention this aspect of Dr. Potera's opinion at all, thus the Commissioner's labeling of that statement is merely speculation that the ALJ regarded the statement as summary. This error requires remand because it undermines the ALJ's decision to exclude Plaintiff's use of a hand-held assistive device from the RFC assessment.

The ALJ found that this limitation was not credible because Plaintiff retained full strength and range of motion over his lower extremities, and had negative straight leg raise (test for lumbosacral nerve root irritation) and Patrick's (test for hip dysfunction) tests. However, the record suggests that Plaintiff used a

cane due to balance issues (caused by numbness in his lower left extremity), and pain. In his summary of the objective medical evidence, ALJ noted several instances where Plaintiff was found to have abnormal sensation in his lower leg and feet, summarized an MRI documenting severe spinal stenosis at L3-L4, severe narrowing and impingement of the L4 nerve roots, severe obliteration of the spinal canal at L4-L5, and a treatment record suggesting that Plaintiff could not heel walk or toe walk secondary to pain (clinical testing for problems in the sacral spine). The ALJ also did not explain why notations of "full strength" outweighed the other significant objective evidence documenting pain and numbness. *See e.g., Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence.").

Furthermore, the VE's testimony in this case does not clearly establish whether the use of a cane in the positions identified would preclude work. The VE testified that the ability to work with a cane during periods when Plaintiff would need to stand would depend on how long Plaintiff would be standing. (Admin. Tr. 48-50). The VE suggested that standing for more than a few minutes while using a cane would be tolerated, but longer periods of time may not be tolerated. *Id.* The RFC in this case allows Plaintiff the change position for every hour, but does not specify how long Plaintiff could be expected to stand. Thus, remand is required for further explanation of the ALJ's evaluation of Dr. Potera's opinion and for

additional explanation of why the use of a hand-held assistive device was excluded from the RFC assessment.

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for relief will be GRANTED as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Plaintiff.

(4)    An appropriate order will be issued.

Date: March 30, 2022                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge